**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jan 17 2014, 10:05 am

Kevin S. Smith

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT, J.J.

**LEWIS H. GRIFFIN**
Fort Wayne, Indiana

ATTORNEY FOR APPELLANT, J.B.

**ROBERTA L. RENBARGER**
Renbarger Law Firm
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**DAVID E. COREY**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF:<br><br>L.B. and S.B., (Children),<br><br>and,<br><br>J.J. (Mother) and J.B. (Father),<br><br>Appellants-Respondants,<br><br>vs.<br><br>INDIANA DEPARTMENT OF CHILD SERVICES,<br><br>Appellee-Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     No. 02A05-1305-JT-250<br>)<br>)<br>)<br>)<br>)<br>) |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Charles F. Pratt, Judge
Cause Nos. 02D08-1207-JT-85, JT-86

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

J.J. ("Mother") and J.B. ("Father") appeal the termination of their parental rights to L.B. and S.B.  We affirm.

## Issues

Mother and Father each raise one issue, which we restate as whether the evidence is insufficient to support the termination of their parental rights.

## Facts

L.B. and S.B. were born on February 15, 2008, to Mother and Father.  Father has a history of alcohol and illegal drug addiction problems, and Mother has various mental and physical problems.  In July 2010, Mother entered into a safety plan with the Department of Child Services ("DCS") because of domestic violence between Mother and Father.  There was another domestic violence incident soon thereafter, and Mother entered into a second safety plan.  In August 2010, DCS filed petitions alleging that the children were children in needs of services ("CHINS") as a result of the ongoing domestic violence.  The trial court found that the children were CHINS, granted wardship to DCS, and authorized Mother to have placement of the children provided that she followed the terms of the Dispositional Decree and Safety Plan.

2

In September 2010, Father was charged with Class C felony battery for an incident that occurred in July 2010 when Father beat a man at Mother's house. Father was also arrested at that time for failure to pay child support. In November 2010, while on bond for the battery charge, Father was arrested again for domestic battery against Mother. The children were present in the home during that battery. On December 2, 2010, the trial court authorized DCS to remove the children from Mother's care. Since that time, the children have been cared for by Mother's sister and her husband.

In June 2011, Father was found guilty of the Class C felony battery charge and was sentenced to five years enhanced by eight years for an habitual offender finding. Father has prior convictions for burglary, domestic battery, and escape. Father violated a no contact order in October 2011 by calling Mother from the prison. Father expects to be released from prison in June 2018. Father has not seen the children since November 2010. Father was unable to participate in services offered by DCS due to his incarceration.

DCS offered numerous services to Mother, including domestic violence counseling, a mental health evaluation and therapy, a drug and alcohol assessment, home based services, and supervised visitations. Mother completed the domestic violence counseling but was involved in further domestic violence incidents with a new boyfriend during the CHINS proceedings. Mother receives Social Security disability and has stable housing. She has been diagnosed with depression, bipolar disorder, borderline personality disorder, and ADHD. Mother received Dialectical Behavior Therapy at Park Center for borderline personality disorder. Mother's case at Park Center was opened in

3

November 2010. During 2011, she attended approximately half of her therapy sessions. Her attendance in 2012 was less consistent, and she stopped treatment in May 2012. Mother did not complete the therapy program.

Mother had supervised visitations with the children. Mother often missed visitations, which she claimed was due to stress, irritable bowel syndrome, and other illnesses. Visitations were repeatedly stopped and restarted, and Mother eventually requested that the four hours of visitation per week be reduced to two hours per week. The visitations never progressed to unsupervised visitations. In fact, on November 14, 2012, Mother requested that the visitations be stopped. She has not visited with the children since that time. Mother also made harassing and threatening phone calls to her sister, who is caring for the children, resulting in her sister obtaining a protective order.

In July 2012, DCS filed a petition to terminate Mother and Father's parental rights. After a hearing, the trial court granted DCS's petition. Mother and Father now appeal.

**Analysis**

Mother and Father challenge the termination of their parental rights to L.B. and S.B. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. In re I.A., 934 N.E.2d 1127, 1132 (Ind. 2010). "A parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" Id. (quoting Troxel v. Granville, 530 U.S. 57, 65, 120 S. Ct. 2054 (2000)). "Indeed the parent-child relationship is 'one of the most valued relationships in our culture.'" Id.

4

(quoting Neal v. DeKalb County Div. of Family & Children, 796 N.E.2d 280, 285 (Ind. 2003)). We recognize of course that parental interests are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. Id. Thus, "[p]arental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities." Id. (quoting In re D.D., 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), trans. denied).

When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. Id. We consider only the evidence and reasonable inferences that are most favorable to the judgment. Id. We must also give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. Id. (quoting Ind. Trial Rule 52(A)). Here, the trial court entered findings of fact and conclusions thereon in granting DCS's petition to terminate Mother and Father's parental rights. When reviewing findings of fact and conclusions thereon entered in a case involving a termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. Id. We will set aside the trial court's judgment only if it is clearly erroneous. Id. A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. Id.

Indiana Code Section 31-35-2-8(a) provides that "if the court finds that the allegations in a petition described in [Indiana Code Section 31-35-2-4] are true, the court shall terminate the parent-child relationship." Indiana Code Section 31-35-2-4(b)(2)

5

provides that a petition to terminate a parent-child relationship involving a child in need of services must allege, in part:

> (B)     that one (1) of the following is true:
>
>> (i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii)   The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C)     that termination is in the best interests of the child; and
>
> (D)     that there is a satisfactory plan for the care and treatment of the child.

The State must establish these allegations by clear and convincing evidence. Egly v. Blackford County Dep't of Pub. Welfare, 592 N.E.2d 1232, 1234 (Ind. 1992).

Both Mother and Father argue only that the trial court's conclusion that the conditions that resulted in the children's removal or the reasons for placement outside the home of the parents will not be remedied is clearly erroneous.[1]   In making this

---

[1] Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive.  Subsection (b)(2)(B)(iii), which concerns repeated CHINS adjudications, is inapplicable here.  Consequently, DCS was required to demonstrate by clear and convincing evidence a reasonable probability that either: (1) the conditions that resulted in the children's removal or the reasons for placement outside the home of the parents will not be remedied, or (2) the continuation of the parent-child relationship poses a threat to the well-being of the children.  Father also argues that the trial court's conclusion that the continuation of the parent-child relationship poses a threat to the well-being of the children is clearly erroneous.  However, the trial court made no findings regarding this factor.  Rather, the trial court found a reasonable probability that the conditions that resulted in the children's removal or the reasons for placement outside the home of the parents will not be remedied, and there is sufficient evidence in the record to support the trial court's conclusion.  Thus, we need not determine whether there was a reasonable probability that the continuation

6

determination, the trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing and take into consideration evidence of changed conditions. In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied. However, the trial court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." Id. The trial court can properly consider the services that the State offered to the parent and the parent's response to those services. In re C.C., 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), trans. denied.

DCS presented evidence that Father has a problem with alcohol and illegal drugs, that he has repeatedly been involved in domestic violence incidents with Mother, that he is incarcerated until 2018, and that he has not seen the children since 2010. Father does not appear to dispute the evidence presented by DCS. Father acknowledges that he is not in a position to care for the children and cannot be involved in their lives until 2018. Rather, he claims that Mother's parental rights should not have been terminated. He contends that the conditions that resulted in the children's removal have been remedied because Mother has substantially complied with the trial court's orders and the domestic violence issues have been resolved with his incarceration. Mother also argues that she substantially complied with the trial court orders. Consequently, we will focus on Mother's arguments.

---

of the parent-child relationship poses a threat to the well-being of the children. See, e.g., Bester v. Lake County Office of Family & Children, 839 N.E.2d 143, 148 n.5 (Ind. 2005); In re T.F., 743 N.E.2d 766, 774 (Ind. Ct. App. 2001), trans. denied.

7

The children were removed from Mother's care due to repeated domestic violence incidents in her home. However, the children remained out of her care due to her mental and physical health problems and failure to make progress during services provided by DCS. Although Mother did comply with some of the trial court's orders regarding participation in services, DCS presented evidence that Mother failed to complete her therapy for borderline personality disorder, had additional domestic violence issues with a new boyfriend, and failed to participate in visitation with the children in a consistent manner. Eventually, Mother stopped all visitation because she "could not do this anymore." Tr. pp. 230-31.

The DCS case manager saw no indication that Mother could care for the children on a full-time basis. She saw "minimal" benefit to Mother from the services that were provided. Id. at 318. She did not believe that Mother was physically or mentally stable enough to care for them. The GAL had concerns as to how Mother could care for the children "all day, every day" if she could not participate in a two-hour visitation or a 10-minute car ride to visitations. Id. at 366.

The trial court concluded:

> By clear and convincing evidence the Court determines that there is a reasonable probability that reasons that brought about the children's placement outside the home will not be remedied. The mother has not completed her therapy program. She has not seen the children on a regular and consistent basis. Her lapses in visitation have caused the children to experience transitional issues. If accepted as true, the physical and emotional disabilities that have precluded the Mother from completing services continued to pose a barrier for her ability to provide for the children should they be placed in her care. The Mother is not yet read[y] for

8

> unsupervised visits with her children and they cannot be safely returned to the mother's care at this time. The children are in a home that has historically been the place that has been supportive of meeting the children's needs prior to the CHINS adjudication. There are several years remaining before the Father can provide for the children. By his admission he will not be able to care for them immediately upon his release from prison. The Father, after the CHINS adjudication engaged in another act of domestic violence that resulted in his incarceration. His behavioral choices resulted in his arrest and severed him from the ability to receive and benefit from services. His historic pattern of behavior suggests that his behavior will not likely change. The Court cannot conclude from the totality of the evidence that the domestic violence issues that first brought about the court's involvement have been permanently resolved.

Appellant's App. p. 82.

Mother and Father's arguments are merely requests that we reweigh the evidence, which we cannot do. DCS presented evidence of Father's incarceration, Mother's physical and mental instability, Mother's minimal benefit from services, and Mother's failure to consistently visit the children. Given this evidence, we cannot say that the trial court's conclusion that a reasonable probability exists that the conditions that resulted in the children's removal or the reasons for placement outside the home of the parents will not be remedied is clearly erroneous.

## Conclusion

The trial court's termination of Mother and Father's parental rights is not clearly erroneous. We affirm.

Affirmed.

ROBB, J., and BROWN, J., concur.

9